Last argued case for the day is United Therapeutics Corporation v. Liquidia Technologies, Inc., No. 22-2133. Mr. Jay, when you're ready. Thank you, Your Honor. May it please the Court, William Jay for United Therapeutics. The board rested on evidence that was neither sworn nor substantial. Those are the two problems I'd like to address today. So, starting with the problem of the unsworn Winkler Declaration. The parties defending the board's decision are attempting to defend it on a ground that the board itself never gave. That's waiver. The board does not grant a waiver. The board was not asked to grant a waiver. And if you look at the sole reference to waiver in the rehearing decision, footnote one of the rehearing decision, it doesn't actually say the board has granted such a waiver. Now, I hear you thoroughly deposed Winkler, right, and obtained sworn testimony as part of that deposition, right? He was deposed, that's right, a week before our patent owner response was due. Did that essentially cure some of your concerns about the lack of penalty of perjury statement? It did not, Your Honor, and I'd like to explain why. The board rested on the idea that United Therapeutics Council had admitted there was no prejudice, and I'd like to address that, too. But you've asked specifically about the deposition, and the board's procedures are set up so that objections are raised, and if necessary, supplemental evidence is served right after the trial is instituted. Deposition, on the other hand, comes, in this case, right before the substantive patent owner response is due. So even if you thought that a proper way to handle an objection like this was to deal with it at deposition, that wouldn't fit with the way the board schedules its proceedings. These are expedited proceedings. There's limited discovery, and to require parties to use the deposition to essentially clean up an attestation that the other side did not make would kind of impinge on the party's ability to use the deposition to actually explore the facts. In other words, if the other side's position is that we should have, at the deposition, gone through each of the factual averments and say, do you swear that this is true under penalty of perjury, that would take up the entire deposition and prevent us from exploring the things that actually require exploration at deposition. But what the board has done in cases like this is said that what parties are supposed to do when a problem like this arises, they're supposed to come to the board. They're supposed to say, I would like to submit supplemental evidence. May I please have a waiver of the applicable requirements? And as the board said quite pointedly, and I think page 57 of its decision, the other side did not do that here. And what the board then rested on on the next page is the supposed lack of prejudice. But I think what my co-counsel had said to the board in the oral hearing was two things. So the board only quotes half a sentence. The sentence before that and the half a sentence after that are what I would like the court to look at if you're looking at page 759 of the appendix. Because counsel for United Therapeutics identified two sources of prejudice. One is that we didn't have the opportunity to object to the request to submit this as supplemental evidence. In other words, if the other side had come forward and said we have a good cause, we would like a waiver. We would have been able to oppose that. Instead, they engaged in self-help and submitted a supplemental declaration at the reply stage. Let me just interrupt for one second. I thought you originally were on appendix page 57. You say you want to go to appendix page 759? I apologize, Your Honor. Let me clarify. So at page 58, the board relies on a colloquy from the oral hearing. The transcripts of the oral hearing is at page 759, like the relevant colloquy. The point I'm making is that the board quotes half a sentence out of context, and what I urge the court to look at is the sentence before and the entirety of the sentence. So before the quoted sentence, what United Therapeutics counsel has said is that in that sense there is some prejudice, meaning we weren't given an opportunity to oppose a request to supplement. And then there's the quoted portion, and then counsel goes on to say, except for the fact that Your Honor relied upon the petition and the expert declaration. In other words, the fact that the board is relying on the unsworn testimony is itself a source of prejudice. The party is not following the rules of evidence, has not properly secured an exception from them, and has nonetheless been able to persuade the board to rely on that. The only thing I want to ask you about is I heard you, in presenting this argument, say that the board referred to one way to correct this problem is to seek a waiver. But I don't see that's exactly what the board said. The board said one way to correct this problem is to give authorization to, I thought, correct the unsworn declaration, not authorization for us to waive. I don't see that. So I don't know if that matters, but it might matter. I mean, does the board really have to wait for a party to ask for it to waive a rule, or can it just apply its rule that says the board may waive its rules? Okay. I see what you're asking. So I think that if the question is can the board do this sua sponte without being asked. So let me bracket for a moment whether it can waive the penalties of perjury requirement, because we say those come from the statute and not from the board's rules. We think that, at a minimum, if the board were doing that, it would do so explicitly and say that it's granting a waiver. This is similar to what this court confronted in the Align versus ITC case, in which the agency and the party defending its decision came to this court and said, we read this as having granted a waiver. And the court said when agencies waive the application of their rules, they say so explicitly. That's because agencies have to follow their own rules, or they will be reversed for being arbitrary and capricious. If they're not going to follow their own rules because they're granting a waiver, they say so explicitly. Now, we, of course, think that you could not waive the requirement of sworn testimony. Sorry, that the board could not waive the requirement of sworn testimony at all. If I may, I'd like to pick up on that point. There are a couple reasons for that. One has to do with the IPR statute in particular. The petition, when relying on expert testimony, is required to use affidavits or declarations. The government suggests that there could be some third category of evidence that is neither an affidavit nor a declaration that's permissible. We think that's not right, and I think that could be seen in two parts of Section 316, which is the provision that governs actual trial proceedings before the board, which says, number one, the only people that you can depose are people who have testified by affidavit or declaration. Number two, it says that the patent owner, in presenting expert testimony in its patent owner response, must proceed by affidavit or declaration. So we think that it makes sense structurally to read the corresponding provision in 312A3 that you must proceed by affidavit or declaration as mandatory. Now, Liquidius suggests that a declaration doesn't have to be a sworn declaration. We think that just can't be squared with Section 25, and I would analogize to the way that the Supreme Court has amended the Rules of Civil Procedure. Rule 56 used to say affidavit. It now says affidavit or declaration. It doesn't have to say sworn declaration because, as the 2010 Advisory Committee notes, everybody knows that you look at Section 1746. That's how you do a declaration that is a substitute for sworn testimony. So if we agree with you that this is statutory and the board has no authorization to waive these requirements, does that, nonetheless, is it still subject to a harmless error analysis? So any APA case is subject to the rule of prejudicial error, and we're not disputing that. But we think that in an ordinary evidentiary case, harmless error looks like this. The fact finder didn't rely on the exhibit in question. Therefore, it was harmless error, so whether it was hearsay or unauthenticated or something like that. So here it's unquestioned that the board predicated its decision on the unsworn Winkler Declaration. I get that, but the board did explain why it thought it was not prejudicial here. I know you attempted to say, do you think it's just per se prejudicial or that there was something more that you would have done if you knew the board was going to rely on it? Well, so three things. One, it's per se prejudicial once the board relies on it in the final written decision. Two, I think the board can – I just want to parse these. Why is that true? If you submit an improper affidavit and the board says, nevertheless, we find this person is credible, his testimony is supported, he has the right credentials, and you all got a chance to cross-examine him on all the merits of his testimony, and therefore, no prejudice. You don't think they can make that kind of analysis? Now, whether they did or not, I assume you're going to get to. But suppose they did that very thorough no prejudice analysis that I just suggested. Would that not be within the board's authority? So respectfully, Your Honor, that sounds more like a waiver analysis rather than, although this is improper evidence, you are not harmed by our relying on it, because the board has to follow its own regulations. One of those regulations, even setting aside the statutes, is only admissible evidence. It's not admissible evidence if it's not sworn. So I think that's sort of the sequence that we would follow there. Granting a waiver, the considerations that you laid out sound more like considerations for granting a waiver. It would have to lay out its reasoning, and it could not be arbitrary and capricious. I think that the inconsistency with its own prior decisions, the two decisions that it itself cites at page 57 of the appendix, in which Hardy didn't come forward and give a timely opportunity to cure the error, that's really where the prejudice comes from. In the sequence of an IPR, there's not a lot of time between when trial is instituted and when the patent owner response is due. And so we had only a week between when the deposition occurred and we actually had to file the patent owner response. At that time, when we virtually walked into the deposition, we did not know to what extent the expert was going to stand by his declaration or not. We had raised this objection, got nothing served in response. And so, I mean, to my colloquy with Judge Cunningham, the question is, were we going to devote the entire deposition to asking whether he stands by his declaration or not? So can I just – I understand a bit of what you're saying, but can I just follow? Is there something differently you would have done as to the content of his declaration and what the board relied on in its merits ruling if it had been sworn or not sworn? Well, let me approach that this way. So I think that his not having signed the attestation would have allowed him to walk away from pretty much anything that he needed to, and our not knowing whether he was going to stand by it, I think that's the prejudice because it affects how we prepare for and take the deposition. I haven't heard him understand why we take an entire deposition to ask a question of, do you stand by everything you said in the declaration? I mean, to me, it could be one question, but explain to me why you think it's more complicated than that. I understand the question, and I suppose if our focus was on curing the other side's problem for it, then I suppose we could do that, not knowing what answer we would get, of course, and I suppose he could have said that. Or if it was a concern that you had that you couldn't rely on it, you know, because you didn't know what he was going to withdraw and take back, you could ask that question. I guess I would just submit that it's not our burden to try and cure the error – sorry, cure the failing. What we tried to do was to explore at deposition the topics that we would explore at deposition, and it's certainly correct that we've – That's what I guess I was trying to ask about. Would you have explored them in any different way if it had been a sworn declaration versus the declaration that you had? And can you provide any explanation about why you – whether you totally avoid that or not? So I can't point to either an exchange that would have been different or – I mean, other than the exchange about whether the headers indicated that – were some evidence that this had been written by counsel because of the close similarity between the petition and the declaration. And that's something you wouldn't have asked because it was not sworn? So, I mean, I think that if he had sworn that these were his beliefs at the end of the declaration, I guess it wouldn't have been necessary to ask the first of the two questions. I guess, yes, I think we still would have inquired into why the header – So you did ask him, did he write it, and he said yes. That's correct, which I submit is somewhat different than asking whether he stands by everything in it or whether – in other words, he wrote it, but he never gave the attestation that it was true and correct under penalty of perjury. Sure, but I mean, like, we've – many of us have all been at these depositions. Like, part of the whole reason you're doing the deposition is to find out, does he stand by the things said in there? And potentially to get admissions to help in your case. I'm kind of having difficulty understanding how your actions would have been different if there had been that statement of perjury. So I definitely take the point, Judge Cunningham, about the ordinary purpose of a deposition, but I would submit that it's a little bit different in an IPR, because all the direct evidence comes in in declaration form. Depositions are limited to those who have provided declarations. Discovery is very limited. And this sort of gets back to the question Judge Hughes had asked kind of about the waiver point. But the Board never sees live testimony. All of this it sees in written form, and that's why it's particularly important that written evidence that it relies upon, which is separate from the depositions that the other side then uses to impeach that declaration, that the written declaration has to be impressed with the guarantees of trustworthiness that go with a sworn attestation. That's why this is not consistent with the rules of evidence. Was there anything else you wanted to talk about? I think you had two points. I feel bad that we've taken up all the time. Quickly, because you completely exhausted your rebuttal time, too, which we'll restore, but I do have one more point I want to make for you. I appreciate the indulgence. I won't test the Court's patience. Really all that I wanted to point out was just if you look at Paragraph 151 of the Winkler Declaration, which is really the only thing that the Board relies on for the limitation about contacting the solution with the base, you'll see that it is quite conclusory. It does not recite anything in the prior art, and most importantly, it does not deal with the process-based objections about pot reactions, about potassium hydroxide that our expert gave at Pages 11-988 and 11-934-35 of the appendix. Thank you. Thank you very much for the Court's indulgence. Counsel, can you help me with your name? Absolutely. It is Sanya Suk Duong. Suk Duong? Yes. Thank you, Mr. Cicciaro. I think you've taken 12 minutes. Good morning, Your Honor. May it please the Court. Sanya Suk Duong on behalf of Laquitia. The issue here is really the veracity of Dr. Winkler's declaration. That's really the heart of the matter. Dr. Winkler testified, and he was asked specifically, and this is at Appendix Page 12004, during the deposition associated with his first declaration, can you provide truthful and accurate testimony here today? And the answer was unequivocally yes. When you look at the rest of the appendix in the deposition, it's Appendix Page 12014, counsel spent a number of questions asking about who wrote the declaration, what specific portions of the declaration, like the header of the declaration, and then turned Dr. Winkler specifically to his signature page, and this is at Appendix Page 12014, and said, is that your signature? Yes. They could have explored quite easily if they thought, do you stand, and it's a single question, do you believe everything you put in your declaration is true and accurate? That would have taken 10 seconds of the deposition. They didn't ask that question. And the reason why they didn't ask that question goes to your point, Judge Cunningham, is that the point of a deposition is to ask, do you stand by the points in your declaration? Looking at countervailing evidence that they decide to put in front of the declarant, do you still believe your statement is correct? Looking at the statement itself, in light of the prior art Dr. Winkler cited, do you believe that these statements are correct? And importantly here, Dr. Winkler's declaration is not in isolation. If you look at the Board's final written decision, and I believe it's in Appendix Pages 8 through 10, and specifically Appendix Page 9, the Board in its final written decision discusses the SteadyMed IPR involves the 393 patent that belonged to UTC. And they specifically say that Dr. Winkler was the declarant in that case as well and provided substantially similar testimony. So the question as to whether Dr. Are you suggesting that that is under oath? I'm not raising it to the point as being under oath, and yes it was. But if the question is, did UTC question the veracity of Dr. Winkler? Could he have stepped back and walked away from everything that he said in his declaration and said, Oh, if you had told me I had to swear this under penalty of perjury, you're right. I'm unwilling to stand by my declaration. The point of pointing out this portion of the final written decision is that if the question is the veracity of his testimony, the veracity of his declaration, and what he said, he said similar things in a prior IPR, the question of veracity itself, which is really what the oath is supposed to be about. The question of veracity. This all goes to harmless error, right? It's all harmless error. And going to Judge Hughes' question. Just a minute. I just want to make sure I understand. So, you know, the argument on the other side is that the statute says that there has to be certain kind of evidence. That certain kind of evidence has to be including oath. That wasn't done here, right? And you're saying, well, review under the APA, you know, if it's harmless error, even if there was an error, then, you know, that's we can affirm in this case. I think that's what your main argument is. Do I understand that correctly? So all of this is going to show, look, it's right. There should have been an oath, but any error was harmless because of the deposition. And there's nothing that they can show they would have done differently. And, you know, Dr. Winkler's veracity was truly tested. I don't understand the context of the argument. And I just want to make sure, and I know you assume this in your question, whether it's a statutory requirement is a separate issue. We don't believe it is. But I'm assuming for your question, even if it is a statutory requirement, we believe this is harmless error. The reason for that is if you look at the American Farm Line's case, if you look at the board's decision, even if you look at counsel's statements in the oral hearing during the IPR, the question is whether it's substantial prejudice or not. And with respect to the points that counsel pointed to, I believe it's appendix page 759 he pointed to, counsel for UTC said, well, if Laquitia had asked for permission to submit a replacement declaration, we may have opposed that if we wanted to. There is, quote, some prejudice there. Some prejudice is not the standard and not high enough to meet the burden that they have to establish with respect to substantial evidence. What do you think he's referring to when he says some prejudice? Honestly, Your Honor, I'm not quite sure. I think it's the fact that they just were not given the right to oppose such a motion, and that itself is the prejudice, and not a more substantive, we would have argued something differently. We would have chosen... But you're saying they would have argued something to oppose the motion. Yes, and that's it. The prejudice, the some prejudice is we were not given an opportunity to oppose a motion. But what is that prejudice? I mean, if you submitted an inadequate declaration, and again, let's assume the statute of requirements, we don't get into the waiver issue, and they don't know whether the board's going to rely on it or not, shouldn't they be given a chance to respond to your request to say, you should accept this even though it's inadequate for these reasons, and they get to say, no, you shouldn't. And maybe they could have convinced the board not to rely on it. They weren't given that chance. Why isn't that prejudice that is harmful? I think they were given that opportunity in their motion to exclude, which was denied and was briefed. So the motion to exclude is substantially the same argument presented here. If there was a different argument to be had, we would have seen it in the motion to exclude. In addition to the arguments they presented, if there was a different position to be had, we would have seen it here on appeal as well. So I think this is probably an unfair summary, but let me give it to you. Basically, all these violations that we're talking about are procedural, and there's no real challenge to the veracity and the merits of what you said. They have arguments about why it's wrong, and it shouldn't be relied on, but that the board, whether or not it was scorned, relied on what he said, and there was no reason to not allow the board to do that. Correct. Under the procedural rules of the board, and the board did actually a very thorough job, and I was the counsel that argued before the board at the IPR hearing. Shouldn't the board be, I think Mr. Jay referenced cases where they excluded declarations from being unscored. So shouldn't the board, and maybe this is more for the PTO counsel, but shouldn't the board be consistent in applying these rules and not let stuff in when they want to rely on it and keep it out if they don't want to rely on it? Isn't that the definition of arbitration? I believe the board has been consistent in this, in the cases that Mr. Jay cited. Those are situations where the party raising the issue that the declaration was not sworn chose to not depose that individual and chose to not establish the veracity of the testimony, which then allowed them to say to the board, your honors, there is no sign that this declaration and this declarant is actually being truthful. And so by taking the opportunity to depose, and in their words, depose them rigorously. You're saying because they did a good job in discovery and talking to your witnesses that they should therefore forfeit their argument about following the rules. Well, they haven't forfeited the argument, but the argument that they need to raise  there is substantial prejudice because of the oath, not because of something else said in the declaration. Now if Dr. Winkler testified, yes, I stand behind my declaration during his deposition, and then all of a sudden retracted everything, then the question becomes, well, one, the oath isn't there, and two, this witness lacks credibility. Here, if they could establish that there was substantial prejudice because the oath was missing itself, that something about that oath deprived them an opportunity to do something other than just make a procedural objection, then there might be some merit to the argument here. But in this situation, because they took that opportunity, because they deposed Dr. Winkler twice, and again, in their own terms, rigorously, and that the board, in rendering its final written decision, went through all those factors and waived, and going to your question, Judge Stoll, to Mr. Jay, you don't need to, the board doesn't need to wait for permission to deal with its own rules. And that's what it did here. It can do it, for lack of a better term, suspended. Because its own, Section 42, 37 CFR Section 42, the board has the right to waive its rules. It doesn't say the board has a right to waive its rules only upon request. It has the right, and it gave itself the right. Approximately how many hours of deposition were taken? So there were two declarations. An original declaration with the petition, and then a reply declaration. Going to just the original declaration on this issue, I would have to say it was just short of the full seven hours.  It was just short of the full seven hours. When you look at the reply, again, it was probably just shy of seven hours. Was the reply under oath? The reply was under oath, yes. And so combined, and in the reply declaration, Dr. Winkler reiterated some points in his opening declaration, because they dealt with the issue of whether you remove the intermediate isolation step. You'd have close to, I'd say, 12 to 13 hours of deposition. Did they make any arguments that they had an inadequate amount of time because of the lack of the perjury statement? Like they basically needed more time to really test the declaration? No, they did not, and they did not use the full time. So to the extent they argued they didn't have enough time, well, you still had probably an hour and a half of time available. There was one point made about the substance. I can certainly address that if you'd like. Otherwise, I yield my 18 seconds. Thank you. You'll hear from the time hours. When you're ready. Sorry. Ms. Quiller? Yes, that's correct. Your Honors, and may it please the Court. The Board did not abuse its discretion in deciding to waive its rule requiring direct testimony in the form. Can I ask you about that? Because I'm not sure that it matters so much about how we place it, but it might. Did the Board, the part we looked at, didn't suggest that it was a waiver. It suggested a prejudicial error finding, you know, no prejudice. Are those the same thing in your view? Well, I think if you look at whether, when it was using its discretion to waive, it looked at whether or not it was prejudiced. Where are you saying it used its discretion to waive? Do you mean to the decision? Yes, so if you look first at Appendix 58, and that's where it decided that there was no undue prejudice. Leading up to this, and there's... Can you hang on? Just let us answer. Certainly. Okay. Because I have the same question. So I think backing up in totality, and this is in alignment with the Align BITC case that UTC's counsel discussed, in totality, the evidence shows that the Board did waive its rules. So it started by discussing the rules, and that's a couple of pages back. It just cites the rules, and it says it has to be in the form of an affidavit. But then looking at the top of Appendix 58, it says, it acknowledges, that the Gensler Declaration was defective. But then it looks at whether or not there was undue prejudice. So that's showing that it sees the rules, it says it's defective, but then it's looking at whether or not to use its discretion to waive its rules. And if there is any question about that... But it doesn't cite the rule. Correct. It says it can waive its rule, and it doesn't say we are using our discretion to waive. So if there was any question about that, it's resolved by Appendix 67, Note 1, which is the rehearing decision, which is where it cites the fact that the Board, our regulations allow us to waive or suspend a requirement of Part 42 of our rules, and that's directly following its citation of 4253. So in the Aligned v. ITC case, there it found there was no waiver, because there was no evidence that the commission in that case acknowledged that they had a rule to follow. There was no discussion of the reasons why it may want to waive its rules. And then the ITC commission in that case did not take the chance to waive its rules when there was an opposition. So does this argument... Is there a difference in this argument if we find that the statute required this one declaration? Yes, of course. Now, while I disagree, and our brief lays that out, the Board cannot waive a statutory requirement. So in that case, we'd look to, I would say, two answers. And again, I won't go through why we do not believe the statute requires. That's in our briefs. But first, the statute doesn't require exclusion even if an oath is required. So the DSV Air Force case says an agency's violation of its statutory procedural requirements does not invalidate the agency's action when Congress has not expressed any consequences. So because the statute does not say a consequence for not having it in the form of an affidavit, it does not require a reversal. But going further than that, as your honors have recognized, there is the rule of prejudicial error. And here... So I guess that's my question, is why are we going to get into this mess of what the statute requires, whether the Board actually waives its rules or all that kind of stuff, when we could just say... We could look at this and say, whatever the argument, the Board found a lack of prejudice. We find that argument supported, and therefore, we don't need to reach those other issues. That certainly cuts to the case. While it is important to the agency to establish the fact that it has the ability to waive its own rules, and for future cases... Well, I don't... I mean, if it's only the agency's own rules, I don't think there's any question that the agency can waive its own rules. But if there's a statutory command, the agency can't ignore statutes. It, as you say, may not have consequences. We've held that in other cases. And... Or it's still subject to prejudicial error. But that's a different question than saying the agency can waive it. It would just leave the question open for another day of whether or not this is a requirement that the agency could waive. So in a future case, you know, it will inform the Board's actions of whether or not it is a simple waiver, or whether or not we're now facing a case which is going to come before this court, which is looking at whether or not the admission of an unsworn declaration, which does not happen routinely, but whether that is prejudicial error. So I think answering the case will start answering the question about whether or not the statute does require it. We'll certainly cut through and provide guidance to parties in the future. But as Your Honor recognizes, this case on the merits of itself can be decided because there was no prejudice tied to the goal that the rule was designed to protect, which is the guarantee of truthfulness. That's to protect the Board and the person that's filing the declaration. This having an attestation of truthfulness requires that the Board know that they have a guarantee of truthfulness. If there had been no deposition taken of the expert, do you believe that there would have been a better argument on prejudice or potentially a different outcome that would be applied by that? I think the Board's decisions certainly weigh out that there could have been a different outcome. Every case, of course,  But in the other cases where there were not a deposition or the argument was raised at institution phase, where there is no deposition process, in those cases the Board had excluded the deposition. But here it felt it had the guarantee of truthfulness that it needed to be able to rely on it. And there's no prejudice tied to that guarantee. All the prejudice that has been discussed is either about a completely different document, the opposition to the replacement declaration, or about the merit to the case. What about opposing counsel's concern on timing? They seem to be concerned about the timing of when it was known. I don't know if they would agree it was known, but take it for purposes of answering this question that it was known that you could, the expert was basically standing by its statements in the declaration. What about the timing of that, since it wouldn't have been known perceivably until the deposition and the way things played out in this particular case? So with respect to their saying that they didn't know whether or not, I've yet to see how that has changed their tactics with respect to what they would have done. You all go into a deposition, and experts in my experience can change their mind frequently with or without an oath. So I don't see how the presence of an oath or the lack of an oath prior to a deposition change the tactics during the deposition itself. Thank you. Thank you. Mr. Day, I'll restore your full signature, Your Honor. Thank you, Your Honor. I'm just going to focus on the authentication and attestation requirements. Actually, I'm going to interrupt you right away. Can I just ask you this, and it's related to what I asked the panel's counsel. And I know you don't agree with it, but if we see that there's, if we find no prejudice here, is there any reason that we would address whether this is a statutory or a regulatory requirement, whether it was waiver or not? If we find no prejudice, then that resolves the case. So if you find no, I mean, I think I'm going to disagree with the concept of prejudice that you're baking into your question. But I think that the reason to address it is because the board and the PTO more generally and parties and IPRs need to understand what happened here and what the law is. Because the board seems, the board resists the idea that there is a statutory obligation to provide sworn testimony and not unsworn testimony. And the upshot of the... So you're asking me and us to decide an issue that perhaps we don't need to reach to get guidance? Well, here's why I think, in order to reject... You understand my reluctance, right? I do. I would like to, I'm not speaking for my colleagues in this, but decide the case on the most narrow ground possible. And if we found no prejudice, that would certainly be more narrow than whether this is a statutory or regulatory command. Right, but I think that the reason that some of the questioning has spun out and that the other side has advocated for why there would be no prejudice is you took a deposition and, as the colloquy with Ms. Queller brought out, puts parties to the really awful choice. Like, if you're going to take this... If you take the deposition, you are waiving your evidentiary objection. And if the court's going to hold that and is going to hold that that is the concept of prejudice that is going to allow something that is not evidence and does not comport with the rules and did not receive a waiver from the board, nonetheless comes into evidence and nothing can be done about it in an evidentiary sense, I think the court ought to tell the agency and the bar that. We don't think that would be a correct holding, right, precisely because these are statutory guarantees, precisely because this is an expedited proceeding that relies on these guarantees of trustworthiness before a factfinder that never gets to lay eyes on any of these witnesses. That's why having the expert sign an attestation right when the opinion is given is essential, especially because, as we pointed out in our brief, if the expert puts in the thing, even if it's been written by counsel, even if other things that we're not arguing happened here were to happen, the expert is then going to be somewhat reluctant to back away from it later on in the proceeding. I think that's another way in which you'll never really know what the prejudice looked like if the argument is by taking a deposition you're going to cure any of the prejudice that you might have argued. This is a statutory violation to be treated as such. Thank you. Thank you, Your Honor.